O

1
2
3
4
5
6
7
8                       UNITED STATES DISTRICT COURT
9                       CENTRAL DISTRICT OF CALIFORNIA
10
11   CYNDI B.,                        )    Case No. 8:20-cv-01354-SP
12                    Plaintiff,       )
13          v.                         )    MEMORANDUM OPINION AND
                                       )    ORDER
14   KILOLO KIJAKAZI, Acting          )
15   Commissioner of the Social Security )
     Administration,                   )
16                                     )
17                    Defendant.       )
                                       )
18   _____
19
20                                    **I.**
21                          **INTRODUCTION**
22          On July 26, 2020, plaintiff Cyndi B. filed a complaint against defendant, the
23   Commissioner of the Social Security Administration ("Commissioner"), seeking
24   review of a denial of a period of disability and disability insurance benefits
25   ("DIB").  The parties have fully briefed the issues in dispute, and the court deems
26   the matter suitable for adjudication without oral argument.
27          Plaintiff presents three issues for decision: (1) whether the Administrative
28   Law Judge ("ALJ") properly considered plaintiff's subjective symptom testimony;

1

(2) whether the ALJ properly considered the opinion of Drs. Michael Pingol and Zafar Khan; and (3) whether the appointment of former Commissioner of Social Security, Andrew Saul, was constitutional.  Mem. in Supp. of Pl.'s Compl. ("P. Mem.") at 6-25; Pl.'s Notice of New Authority ("Notice") at 1-2; *see* Def.'s Mem. in Supp. of Answer ("D. Mem.") at 1-16.

Having carefully studied the parties' memoranda, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ properly evaluated plaintiff's subjective symptom testimony.  The ALJ also properly evaluated the opinion of Drs. Pingol and Khan, and any deficiency in analysis was harmless.  Finally, the court rejects plaintiff's constitutional argument as incomplete and contrary to law.  The court therefore affirms the decision of the Commissioner denying benefits.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, who was 44 years old on the alleged disability onset date, completed high school.  AR at 54, 63.  She has past relevant work as an order clerk, home attendant, and administrative clerk.  AR at 48.

On July 3, 2017, plaintiff filed an application for DIB, alleging an onset date of October 31, 2016.  AR at 54-55.  Plaintiff claimed she suffered from a bulging disc, uncontrollable diabetes, nerve damage on her left leg, asthma, and high cholesterol.  AR at 55.  Plaintiff's application was initially denied on August 31, 2017.  AR at 79.

Plaintiff requested a hearing, which the assigned ALJ held on August 21, 2019.  AR at 31.  Plaintiff, represented by counsel, appeared and testified at the hearing.  AR at 36-47.  The ALJ also heard testimony from Kristan Cicero, a vocational expert.  AR at 48-51.  The ALJ denied plaintiff's claim on October 17, 2019.  *See* AR at 15-25.

1    Applying the well-established five-step sequential evaluation process, the
2  ALJ found, at step one, that plaintiff had not engaged in substantial gainful activity
3  since October 31, 2016, the alleged onset date.  AR at 17.

4    At step two, the ALJ found plaintiff suffered from the following severe
5  impairments: lumbar spine degenerative disc status post bilateral hemilaminectomy
6  at L5-S1; diabetes mellitus with peripheral neuropathy; obesity; right trigger
7  thumb; and asthma.  *Id.*  The ALJ also found plaintiff suffered from the non-severe
8  impairments of hypertension, hyperlipidemia, fibroids, constipation, splenomegaly,
9  and migraines.  AR at 18.

10   At step three, the ALJ found plaintiff's impairments, whether individually or
11  in combination, did not meet or medically equal one of the impairments set forth in
12  20 C.F.R. Part 404, Subpart P, Appendix 1.  *Id.*

13   The ALJ then assessed plaintiff's residual functional capacity ("RFC"),[1] and
14  determined she had the ability to perform:

15         light work as defined in 20 CFR 404.1567(b) except she can lift and
16         carry 20 pounds occasionally and 10 pounds frequently, stand and
17         walk 6 hours in an 8-hour day, and sit 6 hours in an 8-hour day.  She
18         can occasionally climb, balance, stoop, kneel, crouch, and crawl.  She
19         can frequently finger with the right upper extremity.  She cannot be
20         exposed to atmospheric conditions.
21  AR at 19.

22   The ALJ found, at step four, that plaintiff was capable of performing her

---

[1]    Residual functional capacity is what a claimant can do despite existing
exertional and nonexertional limitations.  *Cooper v. Sullivan*, 880 F.2d 1152, 1155-
56 nn.5-7 (9th Cir. 1989) (citations omitted).  "Between steps three and four of the
five-step evaluation, the ALJ must proceed to an intermediate step in which the
ALJ assesses the claimant's residual functional capacity."  *Massachi v. Astrue*, 486
F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

1  past relevant work as a home attendant and administrative clerk.  AR at 23.

2  The ALJ also proceeded to analyze step five in the alternative.  The ALJ

3  determined that, considering plaintiff's age, education, work experience, and RFC,

4  there is a significant number of other jobs in the national economy that plaintiff can

5  perform, including cashier II, marker, or routing clerk.  AR at 24-25.  The ALJ

6  accordingly concluded plaintiff was not under a disability, as defined in the Social

7  Security Act, at any time from October 31, 2016 through the date of her decision.

8  AR at 25.

9  Plaintiff filed a timely request for review of the ALJ's decision, but the

10  Appeals Council denied the request for review on May 29, 2020.  AR at 1.

11  Accordingly, the ALJ's decision became the final decision of the Commissioner.

12  **III.**

13  **STANDARD OF REVIEW**

14  This court is empowered to review decisions by the Commissioner to deny

15  benefits.  42 U.S.C. § 405(g).  The findings and decision of the Social Security

16  Administration ("SSA") must be upheld if they are free of legal error and

17  supported by substantial evidence.  *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th

18  Cir. 2001) (as amended).  But if the court determines the ALJ's findings are based

19  on legal error or are not supported by substantial evidence in the record, the court

20  may reject the findings and set aside the decision to deny benefits.  *Aukland v.*

21  *Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d

22  1144, 1147 (9th Cir. 2001).

23  "Substantial evidence is more than a mere scintilla, but less than a

24  preponderance."  *Aukland*, 257 F.3d at 1035 (citation omitted).  Substantial

25  evidence is such "relevant evidence which a reasonable person might accept as

26  adequate to support a conclusion."  *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir.

27  1998) (citations omitted); *Mayes*, 276 F.3d at 459.  To determine whether

28

1   substantial evidence supports the ALJ's finding, the reviewing court must review

2   the administrative record as a whole, "weighing both the evidence that supports

3   and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at

4   459.  The ALJ's decision "cannot be affirmed simply by isolating a specific

5   quantum of supporting evidence." *Aukland*, 257 F.3d at 1035 (internal quotation

6   marks and citation omitted).  If the evidence can reasonably support either

7   affirming or reversing the ALJ's decision, the reviewing court "may not substitute

8   its judgment for that of the ALJ." *Id.* (internal quotation marks and citation

9   omitted).

10                                          **IV.**

11                                **DISCUSSION**

12   **A.     The ALJ Properly Evaluated Plaintiff's Testimony**

13          Plaintiff argues the ALJ impermissibly rejected her subjective symptom

14   testimony.  P. Mem. at 6-17.  Specifically, she contends the ALJ failed to provide

15   legally sufficient rationale for rejecting her testimony pertaining to the impairments

16   limiting her ability to do work on a sustained basis.  *Id*.

17          The court looks to Social Security Ruling ("SSR") 16-3p for guidance on

18   evaluating plaintiff's alleged symptoms.  SSR 16-3p rescinded and superseded

19   SSR 96-7p and applies to decisions made on or after March 28, 2016.  SSR 16-3p,

20   2017 WL 5180304, at *1 (Oct. 25, 2017).  "Although SSRs do not have the same

21   force and effect as statutes or regulations, they are binding on all components of

22   the Social Security Administration." *Id.* (citing 20 C.F.R. § 402.35(b)(1)).

23          In adopting SSR 16-3p, the SSA sought to "clarify that subjective symptom

24   evaluation is not an examination of an individual's character." *Id.* at 2.

25          [SSR 16-3p] makes clear what our precedent already required: that

26          assessments of an individual's testimony by an ALJ are designed to

27          evaluate the intensity and persistence of symptoms after the ALJ finds

28                                          5

1    that the individual has a medically determinable impairment(s) that

2    could reasonably be expected to produce those symptoms, and not to

3    delve into wide-ranging scrutiny of the claimant's character and

4    apparent truthfulness.

5    *Trevizo v. Berryhill*, 871 F.3d 664, 678 n.5 (9th Cir. 2017) (cleaned up).

6    To evaluate a claimant's symptom testimony, the ALJ engages in a two-step

7    analysis. *Christine G. v. Saul*, 402 F. Supp. 3d 913, 921 (C.D. Cal. 2019) (quoting

8    *Trevizo*, 871 F.3d at 678).  First, the ALJ must determine whether the claimant

9    produced objective medical evidence of an underlying impairment that could

10   reasonably be expected to produce the symptoms alleged.  *Id.*  Second, if the

11   claimant satisfies the first step, and there is no evidence of malingering, the ALJ

12   must evaluate the intensity and persistence of the claimant's symptoms and

13   determine the extent to which they limit her ability to perform work-related

14   activities.  *Id.*

15   In assessing intensity and persistence, the ALJ may consider: a claimant's

16   daily activities; the location, duration, frequency, and intensity of the symptoms;

17   precipitating and aggravating factors; the type, dosage, effectiveness, and side

18   effects of medication taken to alleviate the symptoms; other treatment received;

19   other measures used to relieve the symptoms; and other factors concerning the

20   claimant's functional limitations and restrictions due to the symptoms.  *Id.* (citing

21   20 C.F.R. § 416.929; SSR 16-3p, 2017 WL 5180304, at *4; *Smolen v. Chater*, 80

22   F.3d 1273, 1283-84 & n.8 (9th Cir. 1996)).  To reject the claimant's subjective

23   symptom statements, the ALJ must provide "specific, clear, and convincing"

24   reasons, supported by substantial evidence in the record, for doing so.  *Id.* at 921,

25   929.

26   Here, at the first step for evaluating a claimant's symptom testimony, the

27   ALJ found plaintiff's medically determinable impairments could reasonably be

28

6

expected to cause the symptoms alleged.  AR at 20.  At the second step, the ALJ discounted plaintiff's testimony concerning the intensity, persistence, and limiting effects of her symptoms as not entirely consistent with the medical evidence and other evidence in the record.  *Id.*  Because plaintiff cleared step one and the ALJ found no evidence of malingering, the ALJ's reasons for discounting plaintiff's testimony had to be specific, clear, convincing, and supported by substantial evidence.

The ALJ provided three reasons for discounting plaintiff's testimony: (1) inconsistency with the medical record; (2) inconsistency with plaintiff's ability to perform some work activities after the alleged onset date; and (3) plaintiff's non-compliance with treatment.

## 1.   Inconsistency With the Medical Evidence

The ALJ first determined that plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms were inconsistent with the medical record.  *See* AR at 20-22.  Namely, the ALJ found that although the medical evidence reflected consistent complaints of lumbar-spine symptoms, it also showed many normal neurological findings.  *See* AR at 20.

The ALJ summarized plaintiff's symptom testimony beginning with her allegation that she was unable to work due to her impairments.  AR at 19 (citing AR at 173).  On an exertion questionnaire from August 5, 2017, plaintiff claimed she could only walk 300 yards and could not lift items due to her back and leg pain.  *Id.* (citing AR at 193-94).  She was also having a hard time completing activities of daily living ("ADLs") due to her impairments.  *Id.* (citing AR at 193-95).

The ALJ also provided a thorough summary of the objective record starting with a November 2016 physical examination that revealed plaintiff had 5/5 strength, intact sensation, no focal neurological deficits, 2+ reflexes, and normal

1   gait.  AR at 20 (citing AR at 545).  In April 2017, an MRI of the lumbar spine

2   showed 3mm broad-based disc protrusion bulge complex at L5-S1 with narrowing

3   of the left intervertebral foramen.  *Id.* (citing AR at 321).  Despite this finding, a

4   physical examination from June 2017 showed plaintiff had 1+ and symmetric deep

5   tendon reflexes, 4/5 to 4+/5 strength in her lower extremities, and intact sensation.

6   *Id.* (citing AR at 305).  In August 2017, an examination revealed plaintiff was non-

7   focal, had normal motor strength in her upper and lower extremities, and had intact

8   sensation.  *Id.* (citing AR at 340).

9        In 2018, medical records continued to show plaintiff had 2+ reflexes

10  bilaterally and no motor or sensory deficits.  *Id.* (citing AR at 572, 579).

11  Examinations from August and November also showed she had no focal

12  neurological deficits, 5/5 strength in her extremities, and intact sensation.  *Id.*

13  (citing AR at 483, 586, 591).

14       The ALJ acknowledged that a November 2018 X-ray of plaintiff's lumbar

15  spine revealed lumbar scoliosis, slight straightening of the lumbar lordosis, and

16  facet joint arthropathy of the lower lumbar spine.  *Id.* (citing AR at 348).  Further,

17  an MRI of the lumbar spine from November 20 showed disc desiccation and 4mm

18  right posterior paracentral disc protrusion with some right lateral recess narrowing

19  at L5-S1, 2mm left posterolateral disc protrusion with mild left foraminal

20  narrowing, and persistent slight dextroconvex scoliosis of the lumbar spine.  *Id.*

21  (citing AR at 350).  On January 22, 2019, plaintiff underwent medial branch

22  blocks, sacroiliac joint injections on March 5, and lumbar laminectomy surgery on

23  April 9.  *Id.* (citing AR at 798-99, 801-02, 352, 444).  These records appear to

24  support plaintiff's claims that she could only walk for 300 yards due to pain, could

25  not lift items, and had a hard time completing activities of daily living.  *See* AR at

26  19 (citing AR at 193-95); *Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014)

27  (ALJ must not cherrypick evidence).

28

1      Nevertheless, by May 2019, an examination showed she had normal

2  sensation, motor function, balance, gait, and coordination.  *See* AR at 21 (citing

3  AR at 806).  From May through June, plaintiff underwent physical therapy related

4  to her lumbar surgery.  *Id.* (citing AR at 770-85).  A June 10 physical examination

5  showed plaintiff had 5/5 strength.  *Id.* (citing AR at 444); *see also Celaya v.*

6  *Halter*, 332 F.3d 1177, 1181 (9th Cir. 2003) (ALJ's finding that symptoms were

7  controlled was clear and convincing reason to reject plaintiff's testimony).

8      After reviewing all of this objective medical evidence, the ALJ concluded

9  that, overall, plaintiff's testimony of extreme limitations was inconsistent with the

10  mostly normal findings concerning strength, sensation reflexes, range of motion,

11  coordination, balance, and gait.  AR at 22 (citing AR at 545, 305, 340, 572 , 579,

12  483, 586, 591, 603, 354-58, 806).  Plaintiff correctly notes that the treatment she

13  pursued, including surgery, was not conservative.  *See* P. Mem. at 15.  But the

14  court will not second-guess the ALJ's determination that taking all of the objective

15  medical evidence into account, plaintiff's overall condition contradicted her claims

16  of extreme incapacity.  *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)

17  ("Where evidence is susceptible to more than one rational interpretation, it is the

18  ALJ's conclusion that must be upheld." (citation omitted)).

19      Plaintiff also contends the ALJ failed to connect any specific portions of her

20  testimony to the parts of the record supporting the ALJ's decision.  *See* P. Mem. at

21  12.  While the ALJ's analysis could have been more explicit with respect to

22  describing plaintiff's testimony, on balance, the ALJ's juxtaposition of plaintiff's

23  testimony with the inconsistent medical evidence is sufficiently clear for the court

24  to evaluate.  *See Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (ALJs are

25  not required to "perform a line-by-line exegesis of the claimant's testimony, nor do

26  [the regulations] require ALJs to draft dissertations when denying benefits"

27  (citation omitted)).  The ALJ did clearly identify an inconsistency between

28

plaintiff's statement that she stopped working at her most recent job in November 2018 because she was unable to walk (AR at 20 (citing AR at 36-37)) and her "medical exams from around that time show[ing] generally normal neurological findings." *Id.* (citing AR at 586, 591 (showing plaintiff had no focal neurological deficits, intact sensation, and moves all extremities without any limitations)).

For these reasons, inconsistency with the medical evidence was a specific, clear, and convincing reason, supported by substantial evidence, to discount plaintiff's symptom testimony.

**2.    Inconsistency With Plaintiff's Ability to Perform Some Work Activities After the Alleged Onset Date**

Next, although plaintiff claims she has been disabled since October 31, 2016, the ALJ noted that she trained for four weeks for a casino banker position and worked at a call center for two months sometime around the end of 2018. *See* AR at 20, 36-37, 154. The Ninth Circuit has held that "continued employment during the claimed disability period indicates that [the claimant] had sufficient functioning for employment during that time frame." *Rothery v. Berryhill*, 684 Fed. Appx. 664, 664 (9th Cir. 2017); *Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996) (finding that ALJ did not err in rejecting plaintiff's testimony based on evidence that he completed a training course and sought work during the claimed disability period). Here, although the work at issue did not constitute substantial gainful activity due to insufficient wages, plaintiff still engaged in gainful work for about three months, two years after she claims she became disabled.

Plaintiff testified that she stopped working at the end of 2018 because of excruciating pain that left her unable to walk. *See* AR at 36-37. The Ninth Circuit has cautioned that "[i]t does not follow from the fact that a claimant tried to work for a short period of time and, because of his impairments, *failed*, that he did not then experience pain and limitations severe enough to preclude him from

1   *maintaining* substantial gainful employment." *Lingenfelter v. Astrue*, 504 F.3d

2   1028, 1038 (9th Cir. 2007). In such cases, evidence that a claimant tried to work

3   and failed may actually support his or her allegations of disabling pain. *Id.*

4   (citations omitted).

5       *Lingenfelter* is distinguishable here for two reasons. First, in that case, the

6   failed work attempt did not take place during the claimed disability period. *Id.* at

7   1039. Second, the ALJ here specifically found that plaintiff's claim regarding the

8   reason she stopped working was inconsistent with her medical exams from around

9   that time, which showed generally normal neurological findings. *See* AR at 20;

10  *Nash v. Astrue*, 2008 WL 4279399, at *11 (W.D. Wash. Sept. 12, 2008)

11  (distinguishing *Lingenfelter* because the record did not contain "significant

12  probative evidence that plaintiff was forced to quit working due to his impairments

13  and limitations").

14      Moreover, plaintiff does not address this particular part of the ALJ's

15  reasoning. Instead, she appears to confuse this reason with a finding that her

16  testimony was inconsistent with ADLs. *See* P. Mem. at 9-12. But that is a

17  different type of reason, one that the ALJ did not rely on here. *See* AR at 20. The

18  ALJ clearly referred to her "work activities" not her ADLs.

19      Accordingly, inconsistency with performance of some work activities was

20  also a sufficiently specific, clear, and convincing reason to discount plaintiff's

21  symptom testimony.

22      **3.    Plaintiff's Non-Compliance With Treatment**

23      Finally, the ALJ indicated that plaintiff's statement regarding her

24  "uncontrollable" diabetes was contrary to the medical records showing that "this

25  lack of control may be due to noncompliance." AR at 20 (citing AR at 293).

26  Indeed, a record from November 2016 shows that she refused to take her

27  prescribed insulin until after Thanksgiving due to undisclosed side effects. *See* AR

28

at 293.  In response to her provider giving her information about the effects of high blood sugar on vision, concentration, kidneys, blood vessels, and her body in general, she responded "I don't care!"  *See id.*  The ALJ did not err in discounting plaintiff's testimony for this reason because ALJs can consider "unexplained or inadequately explained failure[s] to seek treatment or to follow a prescribed course of treatment."  *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (internal quotation marks omitted).

Failure to seek more aggressive treatment or follow a prescribed course of treatment may not be a convincing reason if the claimant has a good reason for not doing so.  *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).  But although plaintiff complained of side effects from her diabetes medication, there is no evidence that the side effects were significant enough for her to be justified in refusing to follow treatment.  In fact, it appears they were not, seeing that she was not refusing to ever take the medication, but rather wanted to wait until after the holidays.  In any event, elsewhere in her decision, the ALJ also noted that there was no evidence in the record showing that plaintiff's diabetes resulted in limitations greater than the stated residual functional capacity, and that plaintiff denied symptoms related to diabetes such as dizziness, polyuria, headaches, and numbness.  AR at 21 (citing AR 267, 305, 307, 380, 383, 386, 389, 391, 393, 395, 397, 402, 481, 543, 577, 805).

Accordingly, the court finds the ALJ's reasons for rejecting plaintiff's subjective symptom statements to be specific, clear, and convincing.  The ALJ did not err in discounting plaintiff's testimony.

**B.    The ALJ Properly Considered Drs. Pingol's and Khan's Opinion**

Plaintiff also argues the ALJ failed to articulate a legally sufficient rationale to reject the opinion of Dr. Michael Pingol and Dr. Zafar Khan.  P. Mem. at 17-25. Plaintiff contends substantial evidence does not support the ALJ's determination

12

1  that their opinion is not consistent with the record.  *Id.*

2       For applications filed prior to March 27, 2017, SSA regulations

3  implemented a hierarchical system for evaluating medical opinions.  On March 27,

4  2017, new regulations became effective, which make several significant changes to

5  the way that ALJs evaluate medical opinions.  *See* 20 C.F.R. §§ 404.1520c (new

6  DIB regulations), 416.920c (new SSI regulations).  Under the new regulations,

7  ALJs will no longer "defer or give any specific evidentiary weight, including

8  controlling weight, to any medical opinion(s) or prior administrative medical

9  finding(s), including those from [the claimant's] medical sources."  20 C.F.R.

10  § 404.1520c(a).  Plaintiff filed her DIB application on July 5, 2017, so the March

11  27, 2017 regulations apply to this case.

12       The new regulations establish a new method for evaluating medical opinions

13  and prior administrative medical findings, which requires ALJs to consider five

14  factors: (1) supportability; (2) consistency; (3) relationship with the claimant,

15  including (i) the length of the treatment relationship, (ii) the frequency of

16  examinations, (iii) the purpose of the treatment relationship, (iv) the extent of the

17  treatment relationship, and (v) the examining relationship; (4) specialization; and

18  (5) other factors.  20 C.F.R. § 404.1520c(a)-(c).  The ALJ must explain how he or

19  she considered supportability and consistency, which are the two most important

20  factors to determine the persuasiveness of a medical opinion or a prior

21  administrative medical finding.  20 C.F.R. § 404.1520c(b)(2).  Generally, the ALJ

22  may, but does not have to, explain how he or she considered the other factors.  *Id.*

23  But if the ALJ finds that two or more medical opinions or prior administrative

24  medical findings about the same issue are equally well-supported and consistent

25  with the record, but are not exactly the same, the ALJ must articulate how he or she

26  considered the other remaining factors.  20 C.F.R. § 404.1520c(b)(3).  The ALJ's

27  evaluation of the medical opinions must still be supported by substantial evidence,

28

which is a highly deferential standard.  *See Nunzio D. C. v. Kijakazi*, 2021 WL
3849704, at *3 (C.D. Cal. Aug. 27, 2021); 82 Fed. Reg. at 5853 (explaining that
courts have focused too much on whether ALJs sufficiently articulated the weight
given to treating opinions rather than on "applying the substantial evidence
standard of review, which is intended to be highly deferential to [the SSA]").

### 1.     The Opinion of Drs. Pingol and Khan

Drs. Pingol and Khan cosigned a single opinion dated July 25, 2019.  *See*
AR at 786-88.  They opined that plaintiff could lift and carry only less than ten
pounds on an occasional or frequent basis, stand, walk, or sit only less than two
hours during an eight-hour workday, and sit or stand for only 20 minutes before
having to change positions.  AR at 786.  She would need to shift at will from
sitting, standing, or walking, and would have to walk around five to ten minutes
every 20 minutes.  AR at 787.  She would also need to lie down every 20 to 30
minutes during a work shift.  *Id.*  The doctors formulated these limitations based on
her MRI of the lumbar spine showing lumbar stenosis and her reports of worsened
pain with prolonged sitting, standing, or walking.  *Id.*

Drs. Pingol and Khan further opined that plaintiff could only occasionally
twist, stoop, bend, crouch, climb stairs, or climb ladders.  *Id.*  She also has limited
pushing and pulling abilities due to her back pain and lumbar stenosis.  *Id.*  The
doctors concluded by opining that her impairments or treatment would cause her to
be absent from work more than three times a month.  AR at 788.

### 2.     The ALJ's Findings

The ALJ began her discussion of Drs. Pingol's and Khan's opinion by
explicitly finding it "less persuasive" than the other opinions of record.  AR at 23.
The ALJ then discussed the supportability and consistency factors outlined in the
new regulations.

Regarding supportability, the ALJ noted that Drs. Pingol and Khan

14

supported their opinion by citing to an MRI of plaintiff's lumbar spine and her reports of back pain. *Id.* (citing AR at 787-88). As for consistency, the ALJ concluded that the opinion was not consistent with the record. *Id.* The ALJ reasoned that plaintiff's physical examinations mostly showed she had normal strength, sensation, reflexes, range of motion, coordination, balance, and gait, all of which supported a restriction to light exertional work. *Id.* (citing AR at 305, 340, 355-58, 444, 483, 545, 572, 579, 586, 591, 603, 806). The ALJ also noted that despite her reports of significant pain, her providers rarely documented her showing more than mild distress. *Id.* (citing AR at 285, 305, 308, 340, 354, 380, 383, 386, 389, 391, 393, 395, 400, 482, 545, 558, 572, 579, 586, 591, 738, 753, 764, 791).

Plaintiff counters that the opinion was indeed consistent with the record. She points to her April 2017 and November 2018 MRIs showing a 3mm broad-based disc bulge with narrowing of the left intervertebral foramen and 4mm right posterior paracentral disc protrusion at L5-S1. P. Mem. at 22 (citing AR at 321, 350). She also notes that Dr. Khan diagnosed her with L5-S1 stenosis and degenerative disc disease and recommended physical therapy. *Id.* (citing AR at 449-50). She also tried narcotics, muscle relaxants, an epidural steroid injection, a facet joint injection, and morphine injections. *Id.* (citing AR at 448, 518, 598). She ultimately underwent lumbar decompression surgery in mid-2019. *See id.* (citing AR at 444, 450).

Plaintiff's arguments are not persuasive. Plaintiff primarily challenges the ALJ's findings on consistency. She does not argue that the ALJ failed to consider the evidence she presents. Indeed, the ALJ summarized evidence concerning all of her impairments in her decision (*see* AR at 18, 20-22) and weighed it against examinations that showed mostly normal strength, sensation, reflexes, range of motion, coordination, balance, and gait, as well as no evidence of more than mild

1    distress.  *See Seawood v. Berryhill*, 2020 WL 1624377, at *11 (S.D. Cal. Apr. 2,

2    2020) ("The ALJ is to resolve conflicts in the record and assess the claimant's

3    functionability based on the record as a whole." (citing *Tommasetti*, 533 F.3d at

4    1041)).  Notably, plaintiff does not address the largely normal findings cited by the

5    ALJ.  As such, the ALJ provided substantial evidence to support her finding that

6    the opinion was not consistent with the medical record.  *See Aukland*, 257 F.3d at

7    1035 (holding that substantial evidence is more than a mere scintilla).

8         The ALJ's supportability discussion is not as strong.  Defendant points out

9    that while Drs. Pingol and Khan cited the MRI, they failed to cite any other

10   objective findings or otherwise explain the basis for their assessed limitations.  D.

11   Mem. at 15.  But that is not quite what the ALJ said.  *See Connett v. Barnhart*, 340

12   F.3d 871, 874 (9th Cir. 2003) ("We are constrained to review the reasons the ALJ

13   asserts." (citations omitted)).  The ALJ simply identified the one piece of evidence

14   (an MRI) that Drs. Pingol and Khan relied on to support their opinion, and then

15   referenced the evidence of normal examination results.  *See* AR at 23.  It is implicit

16   in the ALJ's analysis that the MRI cited in support was insufficient when

17   juxtaposed with all the other evidence in the record cited by the ALJ, but the ALJ

18   fails to explicitly explain "how [she] considered the supportability . . . factor[]."  20

19   C.F.R. § 404.1520c(b)(2).  The new regulations instruct ALJs that "[t]he more

20   relevant the objective medical evidence and supporting explanations presented by a

21   medical source are to support his or her medical opinion[] . . . the more persuasive

22   the medical opinion[]."  20 C.F.R. § 404.1520c(c)(1) (explanation of

23   "supportability").  The ALJ here suggests why she found the MRI and reports of

24   back pain to not be relevant enough to support the opinion, but does not clearly

25   articulate her analysis.

26        Although the ALJ's explanation of her analysis is not ideal, to the extent this

27   constituted error it was harmless.  An ALJ's error is harmless where such error is

28

1    inconsequential to the ultimate non-disability determination.  *Stout v. Comm'r, Soc.*
2    *Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see also Burch*, 400 F.3d at 679
3    ("A decision of the ALJ will not be reversed for errors that are harmless.").  On
4    remand, the ALJ would have to explain why she found the MRI and reports of
5    back pain to be insufficient to support the opinion at issue.  But as previously
6    discussed, the ALJ did weigh that specific evidence against multiple objective
7    records showing largely normal findings.  Thus, the court is confident that
8    remanding the matter for a more complete explanation of the supportability factor
9    would not result in a different RFC or disability determination.  *See Shinseki v.*
10   *Sanders*, 556 U.S. 396, 409, 129 S. Ct. 1696, 173 L. Ed. 2d 532 (2009) ("[T]he
11   burden of showing that an error is harmful normally falls upon the party attacking
12   the agency's determination.").

13          Accordingly, the court finds the ALJ's analysis of the opinion of Drs. Pingol
14   and Khan does not warrant remand.

15   **C.     The Court Rejects Plaintiff's Vague Constitutional Challenge**

16          On September 8, 2021, more than two months after defendant filed its
17   Memorandum, plaintiff filed a Notice of New Authority.  In the Notice, she states
18   that the U.S. Department of Justice's Office of Legal Counsel issued an opinion on
19   July 8, 2021 that casts significant doubt on the constitutionality of the appointment
20   of the prior Commission of Social Security.  Notice at 1.  Plaintiff notes that she
21   filed her claim for benefits on July 5, 2017, participated in a hearing on August 21,
22   2019, received the ALJ's adverse decision on October 11, 2019,[2] and was denied
23   review by the Appeals Council on May 29, 2020.  *Id.* at 2.  She indicates that
24   Andrew Saul held the office of Commissioner of Social Security as the sole person
25   dischargeable only for cause between June 17, 2019 and July 11, 2021.  *Id.* at 1-2.

26          The court is puzzled by plaintiff's filing, which does not explain whether she
27

28          [2]   The date of the ALJ's decision is actually October 17, 2019.  *See* AR at 25.

17

1   is seeking any particular type of relief as a result of the alleged constitutional

2   problem with the former Commissioner's appointment.  Plaintiff had never raised

3   the issue prior to the filing of her Notice.  To try to ascertain the nature of

4   plaintiff's argument, the court reviewed other social security cases in which

5   plaintiff's counsel also participated and raised the issue.  From that it appears

6   plaintiff intended to argue that the Commissioner's final decision in this case arose

7   from an unconstitutional administrative process.  *See, e.g.*, *Dareth T. v. Kijakazi*,

8   2022 WL 671540, at \*2 (C.D. Cal. Mar. 7, 2022).  Specifically, the allegedly

9   unconstitutional removal provision rendered Saul's tenure as Commissioner

10  unconstitutional, which in turn tainted his delegation of authority to the assigned

11  ALJ and the Appeals Council to consider and decide plaintiff's case.  *See id.*

12          The court will not address each of the arguments plaintiff's counsel

13  presented in other cases but not here.  The court finds only that it is not convinced

14  plaintiff's constitutional challenge warrants reversal here, for two reasons.  First,

15  the Ninth Circuit recently opined that "the possible invalidity of a restriction on the

16  removal of an official does not render invalid the appointment of the official."  *See*

17  *Toni D. M. v. Kijakazi*, 2022 WL 423494, at \*2 (C.D. Cal. Jan. 5, 2022) (citing

18  *Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1137 (9th Cir. 2021)).  Second,

19  plaintiff has not even attempted to show any connection between the allegedly

20  unconstitutional removal clause and the ALJ's or Appeals Council's decision

21  denying her benefits.  *See id.* at \*3 (citing other cases on point); *Dareth T.*, 2022

22  WL 671540, at \*3 (same).  Accordingly, the court rejects plaintiff's incomplete

23  constitutional challenge.

24  //

25  //

26

27

28

18

## V.

## <u>CONCLUSION</u>

IT IS THEREFORE ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits, and dismissing this action with prejudice.


DATED: March 31, 2022                    _____

SHERI PYM
United States Magistrate Judge